RAWCO, INCORPORATED, LTD., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 77034.   Promulgated January 21, 1938.

*Raymond R. Hails, Esq.*, and *A. L. Moreton, Esq.*, for the petitioner.
*E. C. Algire, Esq.*, and *Lloyd B. Harrison, Esq.*, for the respondent.

130

OPINION.

TURNER: The first issue presented for our determination is whether or not the proceeds received by the petitioner from its sales of production assignments in the four wells constitute income. In the alternative, if that question is decided in the affirmative, then it will be necessary to determine whether the respondent erred in excluding such sums from the "gross income from the property" for the purpose of computing petitioner's depletion allowance.

The petitioner contends that the amounts received by it from such sales constitute contributions of capital, and not income. *Thompson v. Commissioner*, 28 Fed. (2d) 247. The respondent contends that the transactions constitute sales of property interests and that the gain realized therefrom is income to the petitioner.

In *Rogan v. Blue Ridge Oil Co., Ltd.*, 83 Fed. (2d) 420; certiorari denied, 299 U. S. 574, the court held that where certificates sold cover the production or net income of a completed well specifically described in the certificates, the proceeds from the sale of such certificates constitute income to the lessee and, further, that where the well the production of which is sold is to be drilled or is only partially drilled and there is no obligation on the part of the lessee to return to the certificate holders the excess of moneys received over and above the cost of the well, such excess is income to the lessee. In that case the entire proceeds from the sale of certificates were included in income by reason of the taxpayer's failure to show how much, if any, of such proceeds were actually used in drilling the well designated.

In the instant case the proof is more complete and definite as to certain of the sums received by the petitioner from production assignments. As to the $25,000 received under the contract of August 23, 1929, in respect of the production of Lewis Well #1, the $40,000 received under the contract of January 2, 1930, in respect of the production of Noll Well #1, and the sum of $24,000 received under the contract of January 15, 1930, for the assignment of production in Colter Well #1, the contract in each instance specifically provided that the money so paid by the G. P. Corporation to the petitioner was to be used in either drilling or completing the particular well in question. In the first two contracts mentioned it was also provided that the G. P. Corporation could require a showing that the money so paid was actually used in drilling the well or was available to cover the cost of drilling. These contracts fixed the rights and obligations of the parties and under none of them did the petitioner have the right

to convert the funds so received to its unrestricted use. Furthermore, we have no reason to assume that the contracts were not carried out and that the money was not expended by the petitioner in accordance with its obligations thereunder. In the case of each of the three wells the cost of drilling was in excess of the respective sums above mentioned. None of the sums here dealt with constituted income to the petitioner. *Transcalifornia Oil Co., Ltd.*, 37 B. T. A. 119.

Similarly the sum of $6,000 received from the G. P. Corporation on October 18, 1929, for use in drilling Lewis Well #1, should be excluded from income. The contract there recited that the well was being drilled and the sum of $6,000 was desired for the purpose of its completion. While the contract did not contain a provision for an accounting, it does appear that the petitioner did proceed with the drilling of the well after the receipt of the $6,000 mentioned, bringing it to completion eighteen days later. Furthermore the sum of $25,000 already received and the $6,000 here considered were well within the total cost of the well and it may not be said that upon completion of the well there was any excess of the amounts so received over the cost of the well.

The same ruling applies to the compensation of P. G. Cumming for services rendered in connection with the drilling of Noll Well #1 and Colter Well #1, for which he received production assignments in each well. The amounts here unquestionably represented the measure of the labor of Cumming which was completely applied to the drilling of the wells and for which he received his interests in the wells. Clearly the petitioner received nothing that might be classified as income.

So far as the record discloses the remaining sums received from the sale of production assignments were received either after completion of the particular well, at or within a very few days of its completion, or the record is silent as to the state of drilling operations at the time of receipt. Further, there is nothing in the record to show that any of the production assignments for which the said sums were received were sold for the purpose of procuring money to drill the particular well or any well. Neither does it appear that there was any understanding or intention on the part of the parties that the moneys so paid to the petitioner should be so used and no proof has been offered by the petitioner to show that any of the sums so received were actually expended in sinking the well in respect of which the said certificates were sold. On this state of the record the sums so received should be included in petitioner's income for the year in which they were received. *Rogan* v. *Blue Ridge Oil Co., Ltd., supra.*

The petitioner contends in the alternative that if the proceeds from

the sale of production assignments constitute income the sums so received should be included in "gross income from the property" in computing its depletion allowance under section 114 (b) (3) of the Revenue Act of 1928.[1] The respondent contends that the disposition of production assignments by the petitioner were sales of property interests and that the proceeds from such sales were not "gross income from the property" within the meaning of the statute.

On this issue the respondent must be sustained. The allowance for depletion is permitted where the income in question is derived from an economic interest owned and retained by the taxpayer and which economic interest is subject to exhaustion by reason of the production of oil and gas therefrom. *Burnet* v. *Harmel*, 287 U. S. 103; *Herring* v. *Commissioner*, 293 U. S. 322; *Thomas* v. *Perkins*, 301 U. S. 655. On the other hand, a taxpayer is not entitled to a depletion allowance in respect of money received from the sale or disposition of the economic interest itself. In such a case the proceeds from the sale are not derived from property owned and retained by the taxpayer, which property so owned and retained is susceptible of depletion by reason of the production of oil and gas thereon and in respect of which production the payments so received are made. *Darby-Lynde Co.* v. *Alexander*, 51 Fed. (2d) 56; *Commissioner* v. *Fleming*, 82 Fed. (2d) 324; *R. R. Ratliff*, 36 B. T. A. 762; and *Caroline C. Spalding*, 35 B. T. A. 132. See also *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312. In this case the petitioner parted specifically and finally and for a definite sum of money paid in cash with the production assignments in question. The transactions were sales of the economic interests themselves and not the receipt of income in respect of economic interests in the property owned and retained, and the petitioner is not entitled to the depletion allowance claimed.

On the next issue the petitioner contends that the transaction of April 28, 1930, whereby it transferred certain assets to the G. P. Corporation in exchange for capital stock of that corporation, comes within the meaning of section 112 (b) (4) and (i) (1) (A) of the Revenue Act of 1928, hence was a reorganization, and its gain is not

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

\* \* \* \* \* \* \*

(b) *Basis for depletion.—*

\* \* \* \* \* \* \*

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

recognized for tax purposes. The pertinent provisions of the Revenue Act of 1928 are shown in the footnote.[2]

The respondent contends that the exchange was not made pursuant to a plan of reorganization. He argues that it constituted an outright sale and that the difference between the cost of the assets sold and the value of the stock received, or $32,593.81, constituted taxable income to petitioner.

When the petitioner entered into the contract of April 28, 1930, it already owned 37,300 shares of capital stock of the G. P. Corporation. Under the terms of that contract and the supplemental agreement of May 19, 1930, petitioner acquired 243,409 additional shares, making a total of 280,709 shares, or approximately 59 percent of the total outstanding stock of the G. P. Corporation. That petitioner acquired "at least a majority of the voting stock and at least a majority of the total number of shares of all classes of stock" of the G. P. Corporation, is not denied by the respondent, and we think that such acquisition was made within the meaning of the parenthetical clause of section 112 (i) (1) (A), *supra*. *Charles A. Dana*, 36 B. T. A. 97. The respondent's position is that such acquisition was not made pursuant to a plan of reorganization as required by section 112 (b) (4), *supra*.

We think that the provisions of the contract of April 28, 1930, show that the parties entered into the agreement in pursuance of a

---

[2] SEC. 111. DETERMINATION OF AMOUNT OF GAIN OR LOSS.

(a) *Computation of gain or loss.*—Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized.

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(4) SAME.—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however, effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; &ast; &ast; &ast;

plan. The agreement constituted a plan of reorganization if the acts to be performed fall within the meaning of the term reorganization as defined by section 112 (i) (1), *supra*. The respondent places a great deal of importance upon the fact that the parties referred to the transaction as a sale in their supplemental agreement of May 19, 1930. We do not think the fact that they referred to it as a sale would change its nature or effect, nor operate to exclude it from the meaning of the statute if it would otherwise fall therein. *Weiss* v. *Stearn*, 265 U. S. 242. The important fact is that the transaction amounted to a reorganization within the meaning of the statute, and that it was entered into in pursuance of a plan. "The plan of reorganization was the contract made and performed." *Watts* v. *Commissioner*, 75 Fed. (2d) 981; affd., 296 U. S. 387.

The respondent argues in his brief that there is no proof of a continuity of interest on the part of the petitioner in the properties transferred to the G. P. Corporation. We do not see how it could be otherwise. The petitioner owned certain leases and oil drilling equipment. It transferred these assets to the G. P. Corporation in exchange for capital stock in that corporation. No cash or other securities were involved in the transaction. After the transfer petitioner owned a substantial majority of all the outstanding stock of the G. P. Corporation, which would give it absolute control over the assets transferred as well as all the other assets owned by the G. P. Corporation.

In view of the foregoing we are of the opinion that the transaction in question constituted a reorganization within the meaning of section 112 (b) (4) and (i) (1) (A), *supra*, and petitioner's gain is not recognized for tax purposes. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599; *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; and *Charles A. Dana, supra*.

The respondent has disallowed the deduction claimed by the petitioner for the year 1930 in respect of the indebtedness of the Biltmore Petroleum Corporation on the ground that there were definite possibilities of collecting the account as at December 31, 1930. The petitioner claims that the debt was worthless in 1930 and that he is entitled to the deduction claimed. In our opinion, however, the facts of record are not sufficient to sustain that claim. It is true that the only prospect of payment was from the Lewis lease and the production therefrom. It is also true that production of oil from Lewis Well #1 had ceased in November of 1930 and that operating costs in December of that year exceeded the proceeds from the sale of gas, and, further, that operating costs continued to exceed revenues from production until June 1931. It appears, however, that the G. P. Corporation was striving to put the well back on production on a paying basis and the only

reasonable inference that may be drawn from the facts stipulated is that it did succeed in accomplishing that purpose by June of 1931, even though the production so obtained may have been light. It is also a fact that the condition of the well and lease was such that in December 1931 the G. P. Corporation was able to find a purchaser for the property for a reasonably substantial sum and that the petitioner at that time, for the surrender of the 21½ percent interest in production held by it, received cash in the amount of $5,160. While all of the amount so received may not be attributed to the 12½ percent interest looked to for repayment of the indebtedness of the Biltmore Petroleum Corporation, the amount attributable to that interest did further reduce in a substantial way that corporation's indebtedness to the petitioner.

In the light of these facts and in the absence of a more definite showing by the petitioner that it could not reasonably be expected that the well would be brought back on production on a paying basis, we conclude and hold that the petitioner has failed to show that the debt of the Biltmore Petroleum Corporation was worthless at December 31, 1930, the date on which it was charged off.

*Decision will be entered under Rule 50.*