## KILGALLON et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6398.

Circuit Court of Appeals, Seventh Circuit.
April 25, 1938.

James J. Kilgallon and John M. Treveiler, both of Chicago, Ill., for petitioners.

Louise Foster, Sp. Asst. to Atty. Gen., James W. Morris, Asst. Atty. Gen., and Sewall Key and John J. Pringle, Jr., Sp. Assts. to Atty. Gen., for respondent.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

The single question involved in this review is whether an "association," within the meaning of section 701(a) (2) of the Revenue Act of 1928,[1] was created when the owners of certain parcels of land adopted a trustee-manager device for the purpose of holding, managing, improving, and disposing of the land for the benefit of owners and others who became beneficiaries under the trust. The formal instruments which set up the trustee-manager arrangement consisted of a trust agreement and three trust deeds. The trust agreement was executed by the four owners of the land, Harry C. Mecartney, Stanley F. Shepard, Theodore Jansen, and James K. Kilgallon, as beneficiaries, by the Union Bank of Chicago as trustee and by Stanley F. Shepard as manager.

Article 1 in the trust agreement declared the object of the trust to be "the acquisition, management, improvement and disposition of the said premises and of such other property as may be acquired from time to time for the benefits of the parties to this Trust Agreement, and a division of the profits, avails and proceeds of the said Trust property, in accordance with the terms of this Indenture."

By the terms of article 2, the manager had the sole and exclusive power and authority to sell, for cash or on the installment plan, all or any part of the land at not less than the designated price. Article 2 contained detailed provisions to regulate his activities in the sale of the land, and to fix his compensation; and section 5 of article 2 required the manager to protect the trustee and beneficiaries against any loss due to refunds to or recovery by purchasers whose contracts for sale should be forfeited by the trustee for default on the part of the purchaser. There were also provisions for the termination of the manager's relationship in certain contingencies and for the appointment of a successor by the trustee. The manager's term was for three years, unless terminated sooner in accordance with the provisions of the trust agreement.

Article 3 of the trust agreement deals with the "rights, duties and obligations of the beneficiaries." Section 1 fixes the amounts of their respective interest and declares all their beneficial interest to be personal property, and further defines their interests in the following terms: "And the beneficiaries can have no claim, right, title or interest, legal or equitable in the land or other assets or property at any time held by the Trustee under this Trust, but their interest shall be only an interest in the net avails or proceeds thereof, which interest shall be assignable and saleable in whole,

[1] U.S.C.A. title 26, § 1696(3) and note. "When used in this Act [title]—* * * (3) The term 'corporation' includes associations, joint-stock companies, and insurance companies."

or in part, and shall be construed to be and shall be personal property."

By the terms of section 3, whenever the moneys held by the trustee should not be sufficient to pay all charges and expenses of the trust which were entitled to priority over payments to the beneficiaries, the beneficiaries were required to pay to the trustee the amount necessary to pay such charges and expenses.

Article 4 provides that all contracts for the sale of land should be signed by the trustee, and that he should receive all payments upon contracts with the exception of an initial payment, which was to be received and partially retained by the manager. Upon completion of the payment of the purchase price it was the duty of the trustee to convey title to the purchaser. The trustee disbursed all moneys in his control, in accordance with the detailed provisions of article 4. Sections 5 and 6 contain provisions to protect the trustee from personal liability or loss.

In case of resignation by the trustee, a successor or successors in trust were to be appointed by an instrument "signed by the manager and beneficiaries and delivered to the newly appointed trustee."

The trust deeds which constituted conveyances of property to the Union Bank of Chicago as trustee under the provisions of the trust agreement contained extensive grants of power to the trustee to improve, manage, protect, and subdivide the premises; to dedicate parks, streets, etc., and to resubdivide the property as often as desired; to contract to sell, to sell on any terms, etc. There was also contained in the trust deeds authority to lease the property or any part thereof from time to time for any period or periods of time not to exceed 199 years, and to renew and extend leases.

The trust was to continue for three years unless sooner terminated as provided in the agreement; and unless a successor trustee should be appointed, the trust property was to be conveyed to the beneficiaries or their assigns.

Prior to the execution of the trust instrument and the deeds in trust to the Union Bank of Chicago the land was held in the names of the original beneficiaries of the trust; and prior to the creation of the trust the land had been subdivided by the owners into blocks and lots. After the creation of the trust the named beneficiaries conveyed interests to others, for some of whom the original beneficiaries were acting when the property was purchased.

Petitioners urge that the case of A. A. Lewis & Co. v. Commissioner of Internal Revenue [2] is decisive of the question; and that under that decision the trustee-manager device involved in this case must be held not to be an "association" within the meaning of section 701(a) (2), supra.

In the Lewis Case, the trustee-manager device was used by the sole owner of the land involved in the transaction. The provisions in the trust agreement respecting the duties of the trustee and the manager were very similar to those in the instant case. The trust instrument provided that transferable certificates might be issued by the trustee, but none were issued. In the opinion in the Lewis Case, it was pointed out that if it were not for the declaration of trust there would be "the simple case of an appointment by a land owner of an agent to subdivide the land and sell it, receiving as compensation for his services a fixed percentage of the payments made by the purchasers." It was further stated in the opinion that the arrangement had "no element of substance or method which would warrant its designation as an association under the statutory provision in question."

The Supreme Court of the United States in the Lewis Case contrasted the facts of that case with those of Morrissey v. Commissioner [3], the leading case on this subject, and commented as follows: "The question recently has received full consideration in Morrissey v. Commissioner, supra, and three other cases which immediately follow in the same volume. [Citing cases.] The trust reviewed in the Morrissey Case was essentially unlike that now under consideration. There the trust was a medium for the carrying on of a business enterprise by the trustees and participation in the profits by numerous beneficiaries whose interests were represented by transferable share certificates, thus permitting the introduction of new participants without affecting the continuity of the plan. The certificates represented both preferred and common shares. We pointed out that the corporate analogy was evidenced by centralized control, continuity and limited

[2] 301 U.S. 385, 57 S.Ct. 799, 800, 81 L. Ed. 1174.

[3] 296 U.S. 344, 56 S.Ct. 289, 295, 80 L. Ed. 263.

liability, as well as by the issue of transferable certificates; and we said * * * that the word 'association' implies associates."

In the instant case, there was a combination of persons for the purpose of setting up the trustee-manager device. Two of the named beneficiaries, Shepard and Mecartney, purchased the land in question and executed purchase-money mortgages in the sum of $282,252. Prior to the execution of the trust deed Jansen and Kilgallon became associated with Mecartney and Shepard and the four executed the trust agreement. At the time of the execution of the trust deed, however, six unnamed persons owned an interest in the land and were represented by two of the signers of the trust agreement. Consequently, at the time of the execution of the trust deed there were in fact no less than ten beneficiaries who were interested in carrying out the enterprise and who were associated with each other in the enterprise.

Formal certificates of interest were not provided for by the trust agreement, but by the terms of the agreement each beneficiary's interest was declared to be an interest in the net avails or proceeds; also, the agreement provided that such interest should be assignable and salable in whole, or in part, and should be construed to be, and should be, personal property.[4]

The combined powers of the trustee and managers, taken together with the provisions which created transferable interests, resulted in a centralization and continuity of control by reason of such power, and prevented any interruption in the continuity of the enterprise, through change of ownership of interest, by separating the interests entirely from the land and making them personal property and assignable and salable as such.

There are no express limitations on personal liability of the beneficiaries in the trust agreement or trust deeds, but as an actual result of the set-up there was considerable limitation in fact. The beneficiaries expressly obligated themselves to protect the trustee; but the trustee was given a lien on the trust estate for purposes of reimbursement. The liability of the beneficiaries was secondary and analogous to stockholders' liability in certain kinds of corporations.

Under the holding in Morrissey v. Commissioner, supra, it is necessary not only that there be associates, but also that the associates enter into a joint enterprise for the transaction of business. And it is this particular feature which, as stated in Morrissey v. Commissioner, "is not the characteristic of an ordinary trust—whether created by will, deed, or declaration—by which particular property is conveyed to a trustee or is to be held by the settlor, on specified trusts, for the benefit of named or described persons." And as further stated in the opinion, the beneficiaries of an ordinary trust do not "as mere cestuis que trust, plan a common effort or enter into a combination for the conduct of a business enterprise."

In the instant case, as in the Morrissey Case, the settlors of the trust created the trust for the purpose of carrying on a business enterprise for their own benefit. It is true that the enterprise in the instant case was not as extensive as the one provided for by the trust agreement in the Morrissey Case, but in the instant case the object of the trust was stated to be "the acquisition, management, improvement and disposition of said premises" and "of such other property as might be acquired from time to time for the benefit of the parties to the trust agreement. The representative of the trustee, who had complete charge of the trust, testified that the trustee never exercised the function of purchasing other lands for the reason that there was no money available; and also "because the trust agreement did not provide for anything of that sort—did not provide for the purchase of any additional lands."

The detailed provisions covering the disbursement of funds do not include any specific authorization to pay out money for new land. But in view of the comprehensive object of the trust, as stated in article 1, the trustee had the power to accept new conveyances from the beneficiaries; and doubtless, with the consent of the beneficiaries, could have reinvested in lands any undistributed funds which were available for distribution to the beneficiaries.

We are of the opinion that the extensive powers of management and control of the land, under the powers granted to the trustee and to the manager by the trust agreement, met the requirements for "an

---

4 "The test of an association is not to be found in the mere formal evidence of interests or in a particular method of transfer." Morrissey v. Commissioner, supra.

enterprise for the transaction of business" as indicated in the opinion of the Supreme Court in the case of Morrissey v. Commissioner.

Petitioners insist that the controlling element in A. A. Lewis & Co. v. Commissioner, supra, was the agency relation; and argue that in the instant case the manager is essentially an agent of the beneficiaries of the trust; and, consequently, that such an arrangement is not an association within the meaning of section 701(a) (2) of the Revenue Act of 1928, 26 U.S.C.A. § 1696 (3) and note, under the holding in the Lewis Case.

In the opinion in the Lewis Case, the court stated that as between the manager and the one beneficiary the relation was a simple case of appointment by a landowner of an agent "to subdivide the land and sell it, receiving as compensation for his services a fixed percentage of the payments made by the purchasers." The opinion further stated that it was quite evident that such an arrangement had "no element of substance or method which would warrant its designation as an association under the statutory provision in question"; and the following statement was added: "Nor can we see that the intervention of a trustee to hold title, execute contracts and conveyances at the direction of the real-estate agent and make collections alters the situation."

We understand the emphasis in the foregoing to be upon the absence of any "element of substance or method" which would make the arrangement an association. It is clear that there was no element of "association" within the statutory provision in question, in the relation of principal and agent; and the court was of the opinion that the utilization of the trustee did not alter the situation. The thought of the court is summed up in the closing words of the opinion: "There is simply the common relation of principal and agent, coupled with the collateral incidents of an ordinary trust. We are not able to find in the situation an 'association' within the meaning of the statute under consideration, because there are no associates and no feature 'making (the trust) analogous to a corporate organization.'"

We think that petitioners are correct in their contention that merely increasing the number of principals and utilizing the device of an agent to represent all the principals would not create an "association" within the meaning of the term as used in section 701(a) (2). Such an arrangement would in all probability be a partnership, even though the agent's powers might be so extensive that the partnership would have all the advantages, during the continuance of the agency relationship, of centralized management. It would be, however, an enterprise for the transaction of business, conducted for the profit of associates, who are seeking "to share the advantage of a union of their interests in the common enterprise."[5] But we cannot agree with petitioners' assumption that the addition of the element of a trust to an arrangement in which there are several principals transacting business through a common agent has no more significance than was attributed to it in the Lewis Case, in which there was only one principal. In the latter arrangement there was missing the essential element of "associates" or "association." But in the former there already exists a group of associates who are engaged in a common business enterprise.

The element of "associates" or of "association" is not supplied by the trust element. The features supplied by the trust furnish the resemblance to corporations and at the same time distinguish the association in question from partnerships. And when the creators of the trust, who are also beneficiaries, are using it to pool their common interests for the purpose of conducting a joint business enterprise for their own profit, the trust is not an ordinary trust, but merely an instrumentality which is used by the group of associates to obtain some corporate advantages for their business venture. Under such a trust the beneficiaries are only nominally beneficiaries; they are in fact promoters of the business venture. In the ordinary trust the beneficiaries are in no real sense "associated" in the conduct of the trust affairs. Consequently, an ordinary trust does not become an "association" within section 701(a) (2) simply because there are two or more beneficiaries.

As indicated by the foregoing discussion, we conclude that the utilization, under the trust agreement in the instant case, of the trustee-manager device by the persons who were financially interested in the venture, constituted an "association" which was

[5] Morrissey v. Commissioner, supra, 296 U.S. 344, at page 357, 56 S.Ct. 289, 295, 80 L.Ed. 263.

taxable as a corporation under section 701 (a) (2) of the Revenue Act of 1928, 26 U.S. C.A. § 1696(3) and note.

The order of the Board of Tax Appeals is affirmed.