## THRASH LEASE TRUST v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8780.

Circuit Court of Appeals, Ninth Circuit.

Nov. 15, 1938.

---

[1] United States v. Burke, 9 Cir., 50 F. 2d 653, 656.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal. (Herbert R. Macmillan, of Los Angeles, Cal., of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., and Herman Oliphant, Gen. Counsel, Department of Treasury, of Washington, D. C., for respondent.

Before WILBUR and GARRECHT, Circuit Judges, and ST. SURE, District Judge.

GARRECHT, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals. The question presented is whether the Board erred in sustaining the Commissioner's determination that the petitioner was an association taxable as a corporation.

The case arises under the Revenue Act of 1928, c. 852, 45 Stat. 791, and the Revenue Act of 1932, c. 209, 47 Stat. 169.

The tax rate imposed under Section 13 of each of these Acts, 26 U.S.C.A. § 13, is not in question. The issue here involves the application of the following language found in both statutes, Revenue Act 1928, § 701(a)(2), 45 Stat. 878, Revenue Act 1932, § 1111(a)(2), 47 Stat. 289, 26 U.S. C.A. § 1696(3): "(a) When used in this Act— * * * (2) The term 'corporation' includes associations, joint-stock companies, and insurance companies.", and the Treasury Regulations applicable thereto which are found in the margin.[1]

---

[1] Treasury Regulations 74:

"Art. 1312. Association.—Associations and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization. * * * *"

"Art. 1314. Association distinguished from trust.—Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, and the beneficiaries have no control over the trust, although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by sections 161–170 and by articles 861–891. If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 701. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the Act."

Treasury Regulations 77:

"Art. 1314. Association distinguished from trust.—Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by sections 161–170 and by articles 861–891. Where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but have similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the Act."

The facts are substantially as follows:

On October 17, 1930, a tract of 12 acres in Smith County, Texas, was leased by J. E. Thrash and J. S. Rushing for 3 years, and as long thereafter as oil and gas should be produced, the lessor to receive one-eighth of the oil produced and payment of the market value of one-eighth of the gas. On May 25, 1931, this lease was assigned by Rushing to "Gordon Macmillan, Trustee, his heirs, successors and assigns." The assignment agreement was signed "Gordon Macmillan, Assignee." Herbert R. Macmillan, Gordon's father, was at this time acquiring oil leases and distinguishing them by various designations, and this lease was taken in the name of Gordon Macmillan, trustee, as a matter of convenience for the purpose of separating the identity of this lease from other leases. At the time of acquiring the lease and to within a few days before a well was placed on production, Herbert R. Macmillan was the only one who had put any money into the property. In June, 1931, he expended between $2,500 and $3,000, for the drilling of a well and sent Gordon to Texas to take charge of operations for which he received a monthly salary and was to have an interest in the venture.

In taking the assignment of the lease Gordon Macmillan personally bound himself to pay to his assignor, Dr. J. S. Rushing, $48,000 out of 7/32nds of the first oil or gas produced; to begin the drilling of a well on the property and thereafter to proceed therewith in a diligent and workmanlike manner until the well had been drilled to a depth from which oil was then being produced in the vicinity. In the event oil was struck, Gordon Macmillan was further obligated to develop the property with due diligence so the assignor should receive the full consideration payable out of oil with reasonable dispatch. Gordon Macmillan entered into a drilling contract with one, Klop, whereby the former agreed to pay the latter $19,000 for drilling a well on the property. This contract was made in June, 1931, and was signed, "Gordon Macmillan, Trustee."

Percentage interests were assigned to many persons, sometimes of interests in the oil and gas and sometimes of interests in the lease. The total of the former was 24 plus percent and of the latter, 42 plus percent. Oil was struck in commercial quantities on July 31, 1931. For interests assigned before production began the aggregate consideration was $8,000, and for those assigned later the aggregate consideration was $18,000. There were some variations in the terms of the different assignments of interests. All were transferable and some have been transferred. Herbert R. Macmillan conducted all business transactions except the actual operations of the well, which were carried on under his direction by Gordon Macmillan, who exercised his own judgment almost exclusively, but at times he consulted with his father. None of the persons who acquired percentage interests ever participated in any way in the production operations or in any respect concerning the lease or the operations of the property. Whenever there were funds available for the purpose, Gordon Macmillan distributed them to the persons interested. After expenses of operations were paid and the 12½% to the original lessor, the surplus money was distributed to the percentage assignees, according to their interests, the remainder, about 20%, being equally divided between Herbert R. and Gordon Macmillan. No meeting of the owners of percentage interests has ever occurred; no officers were ever elected; no rules, regulations or by-laws adopted. There was no written agreement between Herbert R. Macmillan and Gordon Macmillan; neither was there any trust instrument defining the rights and interests of the percentage owners among themselves or in relation to the Macmillans, who acted as managers by common consent. For the fiscal year ending July 31, 1932, the net income of the venture was $13,044.03; for the fiscal year ending July 31, 1933, the net income was $10,168.72. Fiduciary income tax returns were filed in the name of Gordon Macmillan, trustee. The Commissioner determined that the petitioner was taxable as an association and assessed deficiency accordingly. Upon review by the Board of Tax Appeals, the Commissioner's action was sustained.

As supporting its decision the Board of Tax Appeals cited Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278; and Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273. Petitioner points out that in each of those cases a formal trust agreement was entered into; trustees were appointed to conduct the business; the duties of the trustees and the rights of

the beneficiaries were also specified; that in the case at bar there was no trust agreement and no duties were defined for the self-styled trustee. There was no meeting of the beneficiaries and no appointments of agents or representatives, the Macmillans acting by common consent.

While the Board made no specific findings to that effect, the testimony indicates that it was not expected that the unit holders would be liable for obligations incurred other than as covered by the paragraph in the assigned contract which reads as follows: "The interest hereby assigned shall bear its proportionate share of the cost of drilling the second well on said premises, deduction therefor to be made from the proceeds derived from the sale of the products produced from the first well drilled on said premises, as and when such cost is incurred." It might well be said that this was a further resemblance to a corporation in that there was a purpose to limit the liabilities of the shareholders.

The facts here would indicate that these percentage holders were engaged in an enterprise for the transaction of business and that the property was held and operated as a venture for profit as distinguished from the traditional type of trust, the only object of which is to hold and conserve particular property, with incidental powers, and not for the purpose of conducting a business and sharing its gains. In Morrissey v. Commissioner, supra, 56 S.Ct. 295, the Court stated: " 'Association' implies associates. It implies the entering into a joint enterprise, and, as the applicable regulation imports, an enterprise for the transaction of business. * * *" As the courts have repeatedly pointed out each case must be determined upon its own facts. As the Morrissey Case, supra, said: " * * * it is impossible in the nature of things to translate the statutory concept of 'association' into a particularity of detail that would fix the status of every sort of enterprise * * *." In this case, as in the Morrissey Case, the percentage holders were united for the purpose of carrying on a business enterprise for their own benefit. Although there was no definite trust agreement or any writing expressing the purposes and limitations of the enterprise, it is apparent that the Macmillans were impliedly given extensive powers of management and control of the business which was definitely carried on for profit.

The entity, whatever it may be called, was operating as a continuing business enterprise and intended to reap a profit from the production and sale of oil and gas produced by the lessee on premises held under a lease in which all the percentage shareholders had an interest. This was not any ordinary trust. The title to the property, as far as the percentage shareholders were concerned, was in a single person denominated trustee. The respective interests of the several percentage holders were subject to transfer; the management, so far as appears, was centered in the Macmillans, who conducted the business much after the manner of directors of a corporation.

This is a border line case. The entity here, the Thrash Lease Trust petitioner, in its general structure and method of operation, is sufficiently analogous to a corporate organization to justify the action of the Commissioner in determining that the income of the enterprise should be taxed in the same manner as that of a corporation. This holding is in harmony with the cases from the Supreme Court above noted and with the previous decisions of this court. Commissioner v. Vandergrift Realty & Investment Co., 9 Cir., 82 F.2d 387; Monrovia Oil Co. v. Commissioner, 9 Cir., 83 F.2d 417; Bert v. Helvering, 67 App. D.C. 340, 92 F.2d 491; Kilgallon v. Commissioner, 7 Cir., 96 F.2d 337.

Affirmed.