## JACKSON et al. v. UNITED STATES.
## No. 7778–RJ.

District Court, S. D. California, Central Division.

Nov. 16, 1938.

614

Raymond R. Hails, of Los Angeles, Cal., for plaintiff Committee.

Ben Harrison, U. S. Atty., E. H. Mitchell and Alva C. Baird, Asst. U. S. Attys., Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, and Armond Monroe Jewell, Asst. U. S. Atty., all of Los Angeles, Cal., for the United States.

JENNEY, District Judge (after stating the facts as above).

The legal question presented is whether or no the organization, which plaintiffs represented, was in fact an association, properly taxable as a corporation under the applicable revenue laws of the United States. As an aid in answering this question, certain legal tests have been indicated by the courts. The United States Supreme Court in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, stated the principle that to have an association, not only must there be associates but they must be associated in a joint enterprise. The court then pointed out the following five respects in which a taxable association is

analogous to a corporation, upon which analogy of course taxability depends:

(1) The trustees are a continuing body with provisions made for the succession of title in that body.

(2) There is centralized management and control.

(3) The death of a holder of a beneficial interest has no effect upon the life of the venture.

(4) The beneficial interest may be transferred.

(5) There is a limitation upon the liability of the holders of beneficial interests.

The Circuit Court of Appeals for this Ninth Circuit, in Commissioner v. Vandegrift Realty & Inv. Co., 82 F.2d 387, has likewise considered the same problem and indicated that the three principal elements which must be carefully examined are, (a) purpose, (b) actual operation, (c) form of organization.

The tests suggested by the Morrissey Case appear to be met in the facts at bar. The Committee is a continuing body with powers of self-perpetuation. Continuity of title is provided for by the sections of the Agreement relating to the depositary bank. The Committee is an effective means of securing centralized management and control over the business. Upon the death of a certificate holder, the venture does not terminate nor are the operations in any way handicapped. The Certificate holders may transfer their interests upon recordation of the change with the depositary, and their liability is limited, whether such liability be to members of the Committee, to the creditors, or to the general public.

Turning to a consideration of the tests indicated in the Vandegrift Case, the court must examine the Agreement itself to determine first the purpose of the organization. Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L. Ed. 278. The only passages in the Agreement relating to this subject are as follows:

"It is the intent and purpose of this agreement, and therefore hereby agreed by and between the depositing bondholders and the committee, that all bonds and coupons deposited hereunder shall be held by the depositary until, in the judgment of the committee, there shall no longer be any necessity for any action by the committee that may be authorized hereunder."

"Without hereby limiting the general powers vested in it, the committee is specifically and specially authorized in its discretion * * * to expend the monies so realized for such purposes as in its uncontrolled discretion it deems to be for the best interests of the depositing bondholders; * * * and to take possession or control of *and/or operate* all or any of the mortgaged property and other property acquired by or on behalf of the committee, through agents, superintendents, tenants and/or trustees."

It is evident from the above and from other portions of the Agreement, that if the primary purpose of this organization is liquidation, it is not so stated in the Agreement itself. It is evident that the purpose is whatever the uncontrolled discretion of the Committee may decide, from time to time, it ought to be.

Examining now the powers which the Agreement bestows upon the Committee, the court's attention is at once attracted by a phrase already quoted, "and/or operate". The situation here is quite similar to that in the case of Kilgallon v. Commissioner, 7 Cir., 96 F.2d 337, where the court pointed out that the original corporation had been created to make money by doing business, and the trust form of organization had been adopted solely for the purpose of getting around the anticipated expiration of the corporate charter. There, as here, the trust agreement itself gave the Committee power to continue with the original objectives, namely, the operation of the business for profit. While it cannot be contended that the bondholders had no intention of liquidating, still, it is evident from the Agreement that the Committee was empowered to operate the business—profitably, if possible. An incidental intention to liquidate in case of unsuccessful business operations is not sufficient to make a liquidating trust out of what would otherwise be a taxable association. The Agreement at bar discloses that the trustees had practically unlimited discretion in choosing whether they would expand, merely maintain the property, or liquidate. In fact the agreement here is broader than in the Kilgallon Case, because here the Committee was empowered to purchase new property, a right there denied the trustees.

Turning now to a consideration of the second test suggested by the Vandegrift Case—actual operation: The court cannot

help but feel, from all of the evidence of the Committee's actions, that these acts, together with the policies adopted as long-run objectives, are more indicative of "doing business" than of "liquidation". In reaching this conclusion, the court finds the following facts to be particularly pertinent:

(1) The offices, stores and stalls have been repeatedly leased to tenants; most of this space has been re-leased innumerable times for short terms, thus showing continuously active operation of the business.

(2) These operations were sufficiently successful to induce the Committee to continue its leasing practices, rather than force a sale.

(3) The Committee has employed a superintendent, a bookkeeper, janitors, gardeners, and other agents and servants, both to care for the properties and record the progress of the business.

(4) The Committee's admitted aim was "to build up the income from the properties before attempting to sell".

(5) The Committee was continually negotiating to reduce the amount which it paid as rent on its own leasehold interest.

While the operation and rental of this market may not constitute so large an enterprise as that considered by the United States Supreme Court in the case of Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278, where the association operated a number of apartment houses, nevertheless the principle involved is fundamentally the same. The court there said [page 286]: " 'The trustees, although they did not exercise all of the powers given to them in the trust instrument, were engaged, nevertheless, in carrying on a business for profit in much the same manner as the directors of a corporation are associated together for the purpose of carrying on a business enterprise.' * * * They formed a combination to conduct the business of holding, improving and selling real estate, with provision for management through representatives, with continuity which was not to be disturbed by death or changes in ownership of beneficial interests, and with limited liability. * * *"

Here, the evidence shows that the purpose of the Committee was not to sell at once, but to operate the realty holdings in such manner as to build up income so that if possible a sale of the assets might bring a complete return on the original investment. To say that such an intention constitutes a desire to liquidate would be a misapprehension of the meaning of "liquidation" as considered for tax purposes. Mere passive listing of the property for sale with one or two brokers is not sufficient. There must be continued affirmative acts on the part of the Committee evidencing an active interest in effecting a sale. There must be a showing on behalf of the plaintiff taxpayer that the price asked was one which was reasonably commensurate with the amount that might be secured at a forced sale. Liquidation implies securing whatever one can get, rather than what one hopes to get. Here the evidence fails to indicate that the price of $375,000, which was the amount asked by the Committee, bore any relation whatever to the true value of the property or to the amount which might have been realized at a forced sale.

The third test suggested by the Vandegrift Case—that the form of organization is in effect a corporate one—appears to have been met in this case. The Circuit Court of Appeals for this Circuit has found the test to be satisfied, even in the absence of a formal agreement. Thrash Lease Trust v. Commissioner, 9 Cir., 99 F.2d 925, November 15, 1938; C.C.H.1938 Federal Tax Service, Page 9582; Prentice-Hall 1938 Federal Tax Service, Paragraph 5.692.

Counsel have cited the decision of this court in the companion case of Trust No. B.I. 35, Bank of America National Trust & Savings Association, Trustee, v. U. S., 25 F.Supp. 608, reported immediately preceding this opinion. That case is clearly distinguishable on its facts from the situation presented at bar. There, the agreement contemplated the eventual exhaustion of oil reserves constituting the corpus of the trust estate. When the oil was used up, the land was worthless. Here, the corpus of the trust estate is composed either of fee interests, or of leasehold interests expiring quite some time in the future, and located in a metropolitan area. No showing has been made that the value of plaintiff's property interests will diminish at any time.

The agreement in the preceding case contemplated no acts other than those merely necessary to preserve the corpus during liquidation. Here, the Agreement is much broader. The purposes of the organiza-

tion are vague, indefinite, and practically within the discretionary control of the Committee. The powers bestowed upon the Committee are sweeping and practically unlimited by any restrictions, except those which the Committee might impose upon itself as the result of sound business judgment, or "for the best interests of the depositing bondholders". The Agreement in this case is broad enough to permit the Committee to acquire new land "and/or operate" the properties as a business, or even engage in new activities.

Finally, in this case, the actual operation has been more consonant with doing business than with liquidation. In the preceding case, there were no employees and no provision was made in the agreement for any employees. Here, pursuant to the Agreement, the Committee employed a superintendent, a bookkeeper, and five or six workmen to act as gardeners, janitors and yardmen. The supervision required of the Committee or its agents has been a daily burden—in the matter of leases, if in no other, since out of the one hundred stalls on the property, nearly one-third were rented on a day to day basis. All these facts indicate that the activities of the Committee were designed to increase income. The supervisory acts were so extensive, so continuous, and so necessary as to constitute the doing of business within any reasonable definition of that phrase. This is not a case where the business activities of the trustees are so limited as to be merely incidental. Ittleson v. Anderson, 2 Cir., 67 F. 2d 323, 13 A.F.T.R. 314; Lansdowne Realty Trust Commissioner, 1 Cir., 50 F.2d 56; Gardiner v. U. S., 1 Cir., 49 F.2d 992. Cf. Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428; U. S. v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825. The business activities so predominate that any efforts to liquidate can only be said to have been purely incidental and pro forma. Cf. Flint v. Stone Tracy Co., Cedar St. Co. v. Park Realty Co., 220 U.S. 107, 170, 31 S. Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312.

As a matter of fact, after the Committee took over, the business seems to have been conducted in substantially the same manner as it had been previously.

One further element is present which the court deems worthy of comment and which reenforces the conclusion that judgment in this case must be for the defendant. We must consider the situation at the time the Committee was created by the execution of the Agreement. Before anything could be accomplished toward either liquidation or business operation, many things had to be done. These preliminary steps included the depositing of bonds with the depositary, the issuance of certificates of deposit, the intervention in or institution of various legal proceedings in which the bondholders were interested, and the receipt of cash advances from certificate holders, to meet preliminary expenses. The property had to be appraised, all sorts of notices had to be sent out to interested parties, arrangements had to be made to purchase the property at a trustee's sale, negotiations had to be conducted to determine the amount of the bid, and whether or no under the terms of the Trust Indenture the bids could be made in other than cash, i. e., payments made in bonds rather than in cash. All these things had to be done after the organization was effective. Whatever the ultimate purpose of the organization—liquidation or business operation for profit —until that purpose was definitized, these acts certainly constituted doing business from the standpoint of the income tax law. In any event, when a change of objective occurs, the burden is upon the taxpayer to establish that fact and to prove his new status. Avery v. Commissioner, 5 Cir., 22 F.2d 6, 55 A.L.R. 1277. This burden has not been satisfied. The Commissioner seems to have been justified in ruling that the organization was a taxable association.

Judgment is accordingly rendered, with costs, for defendant United States of America.