574

## JACKSON v. UNITED STATES.
### No. 9314.

Circuit Court of Appeals, Ninth Circuit.
March 27, 1940.

Raymond R. Hails, of Los Angeles, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen. and Sewall Key and John A. Gage, Sp. Assts. to Atty. Gen., and Ben Harrison, U.S. Atty. and E. H. Mitchell and Armond Monroe Jewell, Asst. U.S. Attys., all of Los Angeles, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Central Wholesale Market Company, a California corporation, owned certain property in the City of Los Angeles, consisting of real estate and improvements, parts of which were held in fee and parts of which were leaseholds. The corporation in 1927 executed a mortgage and trust indenture on the above property to secure a bond issue. The company defaulted in its payments. Appellants are the duly qualified and acting members of Bondholders' Protective Committee for Central Wholesale Market Company First Closed Mortgage Six and One-half Per cent Sinking Fund Gold Bonds, formed pursuant to a Bondholders' Protective Agreement. Appellants, as members of said Committee, instituted this action.

At the time said Bondholders' Agreement was entered into, there were outstanding $550,000 face value of defaulted bonds of Central Wholesale Marketing Company, of which amount $529,000 face value of bonds were deposited with the depositary, as provided in said Protective Agreement.

By the provisions of the Bondholders' Agreement the Committee, as trustee, was vested with legal title to, and ownership of, all deposited bonds. No limitation is imposed on the powers of the Committee as the legal owner. Express authority is given to sell for cash or on terms or to exchange any property purchased at foreclosure or trustee's sale, and to take possession or control and operate any property acquired by, or on behalf of, the Committee, through agents, tenants, or trustees. Further, no member of the Committee is to be liable for anything but his own individual wilful misconduct. In case of vacancy on the Committee a majority of the remaining members can fill vacancies, and each such successor shall have all powers of his predecessor.

The trustee under the indenture securing said bonds, acting under instructions of said Protective Committee, caused the trust estate to be sold at public auction on March 27, 1929. At said sale said Protective Committee bid in the trust estate, applying the deposited bonds in partial satisfaction of the bid price and paying in cash a sufficient amount to pay fees and expenses of foreclosure and to pay off non-depositing

bondholders. The total indebtedness the Committee incurred and assumed in connection with the acquisition of said estate was $22,136.69.

All the buildings and other structures located on the properties acquired at said sale were suitable for a public market place.

The Committee has had possession of said property at all times since March 27, 1929, has collected rents therefrom, has paid necessary expenses of operation and discharged all indebtedness. The Committee from time to time, after retaining a small sum for working capital, has distributed to the depositing bondholders substantially all funds in its hands. The net income from the property for the period from March 27, 1929, to December 31, 1937, was $128,537.12. Depreciation and amortization $68,529.36. Distribution to beneficiaries $166,635. The net income from the property increased from 1929 to 1932, inclusive, and decreased from 1933 to 1936.

In maintaining and operating the market the Committee acted principally through Mr. Jackson, one of its members. He testified that there were over one hundred stalls in the market property and that more than one-half of these were occupied by tenants renting from day to day, which required on the premises at all times a superintendent, who received a salary. Other paid employees were a bookkeeper, a janitor, and several workmen who helped care for the property.

The Committee filed with the Collector of Internal Revenue income tax returns as a corporation for the partial year 1929 and the calendar years 1930 and 1931. On those returns it was stated that the Committee was an association engaged in the business of operating a public market. For the years subsequent to 1931, however, the Committee filed fiduciary returns of net income of Form 1041, paying no tax thereon and claiming that all income was distributable under the Bondholders' Agreement to beneficiaries of a trust.

On March 15, 1933, the Committee filed claims for refund of the income taxes paid for the calendar years 1930 and 1931, together with interest thereon. The Committee also filed amended returns on fiduciary Form 1041, for each of these years. All claims for refund were rejected by the Commissioner of Internal Revenue and suit was then brought in the District Court for the amount of taxes claimed to have been overpaid.

The District Court held that the organization was an association taxable as a corporation within the purview of Section 701 (a) (2) of the Revenue Act of 1928. [1] Judgment was entered for appellee, and appellants have appealed therefrom to this court.

While it could not be asserted that there was no intention whatever to liquidate the property, it is not stated in the Agreement that this was to be the primary purpose of the Committee. All power was within the discretionary control of the Committee. It had authority to operate the property as a going business and could, incidentally, if and when it appeared to be more advisable, liquidate it.

The Committee listed the property for sale with a real estate firm at a price of $375,000. Negotiations were had with only one real prospective buyer. Mr. Jackson,

---

[1] Revenue Act of 1928, c. 852, 45 Stat. 791, 878, 26 U.S.C.A. Int.Rev.Acts:

"Sec. [§] 701. *Definitions.*

"(a) When used in this Act—

\* \* \* \* \* \*

"(2) The term 'corporation' includes associations, joint-stock companies, and insurance companies."

Treasury Regulations 74, promulgated under the Revenue Act of 1928:

"Art. 1314. *Association distinguished from trust.*—Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, and the beneficiaries have no control over the trust, although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by sections 161–170 and by articles 861–891. If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 701. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the Act."

the secretary, testifying for the Committee, said he would have recommended a price of $260,000, but there is no evidence any such price was ever submitted to any prospective buyer, nor was there any evidence introduced indicating actual value of the property.

The Committee "operated on the basis that the value of the property is absolutely determined by the income" and that the income had to be built up before there could be a sale. Accordingly, the efforts of the Committee seemed to have been confined to first building up the income with the idea of subsequently finding a buyer.

Evidence of efforts to sell the property is very vague and inconclusive, while the purpose to hold it and increase the income appears clear and definite. As stated, many of the stalls in the market were rented on a day-to-day basis. Business on the premises was being carried on daily by the Committee through its superintendent, janitors, gardeners, and yard men.

■ This is not a case where the business activities were so limited as to be merely incidental, as held in Lansdowne v. Commissioner of Internal Rev., 1 Cir., 50 F.2d 56; Gardiner v. United States, 1 Cir., 49 F.2d 992; and other cases cited by appellant. Here supervisory acts were so extensive, continuous, and necessary as to constitute the doing of business under any reasonable definition of that term. As the District Court well said, 25 F.Supp. 613, 616, "An incidental intention to liquidate in case of unsuccessful business operations is not sufficient to make a liquidating trust out of what would otherwise be a taxable association."

■ From a careful consideration of all the evidence bearing on the activities, methods, and purposes of the Committee the lower court was convinced that "the policies adopted as long-run objectives, are more indicative of 'doing business' than of 'liquidation'". As the basis for this conclusion the court pointed to the following facts as particularly pertinent:

"(1) The offices, stores and stalls have been repeatedly leased to tenants; most of this space has been re-leased innumerable times for short terms, thus showing continuously active operation of the business.

"(2) These operations were sufficiently successful to induce the Committee to continue its leasing practices, rather than force a sale.

"(3) The Committee has employed a superintendent, a bookkeeper, janitors, gardeners, and other agents and servants, both to care for the properties and record the progress of the business.

"(4) The Committee's admitted aim was 'to build up the income from the properties before attempting to sell'." Note

Appellants place much reliance on the opinion of this court in Commissioner of Internal Rev. v. Atherton, 9 Cir., 50 F.2d 740, 741. Some language in this opinion appears to support appellants' argument. However, the facts in that case do not correspond with those here. There "The purpose for which the trust was formed was liquidation and distribution of real estate holdings of the Honolulu Rapid Transit Company, Limited, which could not be utilized by the company for transit purposes." No office or place of business was maintained and there was nothing that required the time, attention, or labor of any one for profit or for livelihood.

Here the provisions of the Bondholders' Protective Agreement, the form of the organization, its purpose, and the actual operation of the Committee, all combined, require that we sustain the holding of the court below under our decision in Commissioner of Internal Rev. v. Vandegrift R. & Inv. Co., 9 Cir., 82 F.2d 387. That the Committee organization here is analogous to a corporate organization is determined by the holding in Morrissey v. Commissioner of Internal Rev., 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263.

The organization represented by appellants is an association taxable as a corporation.

Affirmed.