TRANSCALIFORNIA OIL COMPANY, LIMITED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73111. Promulgated January 20, 1938.

*Melvin D. Wilson, Esq.*, and *George H. Rudd, C. P. A.*, for the petitioner.

*J. C. Maddox, Esq.*, for the respondent.

122

124

## OPINION.

TURNER: The respondent's contention that petitioner's transactions in royalty interests resulted in receipt of income is based on the proposition of barter and sale. He argues that the transactions constituted absolute sales of property, and that since the lease was assigned to the petitioner without consideration, the total amounts received from such sales should be included in its gross income.

The petitioner, on the other hand, contends that its development scheme was a joint venture, prosecuted by it and its coinvestors, and that payments received in exchange for interests in production, whether in cash, property, or services, constituted contributions of capital. It is argued that under the California law appertaining to such projects its status was that of a trustee charged with the duty of applying such capital contributions to the uses and purposes specified in its application to, and the permit issued by, the state corporation commission. In that connection petitioner cited the case of *Differding* v. *Ballagh*, 121 Cal. App. 1; 8 Pac. (2d) 201, wherein the District Court of Appeals, Fourth District, State of California, held that "a voluntary trust with the production owners as beneficiaries * * * was created by the payment of the various sums of money by the production owners, with an implied covenant on the part of the trustees to use the money to develop oil production on the leased property if it was oil bearing."

Assuming but not conceding or deciding that a lessee might be the trustee or agent of the certificate holders, the Circuit Court of Appeals for the Ninth Circuit, in *Rogan* v. *Blue Ridge Oil Co., Ltd.*, 83 Fed. (2d) 420, referring to *Thompson* v. *Commissioner*, 28 Fed. (2d) 247, stated that it was "equally conceivable that the lessee could realize a profit in creating such agency or trust, which profit would be personal to the lessee." Referring later to a situation where a lessee sold percentage interests, contemplating the sinking of a new and particular well, the court said that in such a case "there is no obligation to return to the certificate holder the excess of moneys received by the lessee as consideration for the contract, above the cost of the well. Such excess constitutes income to the lessee." In that

case the court held that all of the proceeds from the sale of percentage interests constituted income to the lessee, since it had failed to show how much, if any, of the proceeds were actually used in drilling the well designated.

In the instant case there is no such failure of proof. The record shows that the sales were made for the specified purpose of obtaining funds to be used in drilling Saylin-Verge Well No. 1, and further, that the entire amount received by the petitioner from the sale of certificates was actually expended in the drilling of that well. We are of the opinion that the sums received by the petitioner from the certificate holders were received subject to an implied trust to use those funds in the sinking of the well, *Differding* v. *Ballagh, supra,* and, since in this case the petitioner received nothing from the sale of percentage certificates in excess of the amount necessary to sink the well or in excess of the amount actually expended therein, it never at any time received any such sums without restriction as to their use and disposition. There was no excess which the petitioner might have appropriated to its own use, and under such circumstances it can not be said that any part of the sums received by it from the certificate holders in the production of Saylin-Verge Well No. 1 constituted income to it. This issue must be decided for the petitioner. Cf. *Rogan* v. *Blue Ridge Oil Co., Ltd., supra; United States* v. *Knox-Powell-Stockton Co.,* 83 Fed. (2d) 423; and *Thompson* v. *Commissioner, supra.*

The respondent has allowed petitioner a depletion deduction for the year 1931 in the amount of $2,010.77, which, according to the stipulation of facts, represents "50 per cent of the net income from the Saylin-Verge Well No. 1." Section 114 (b) (3) of the Revenue Act of 1928 [1] provides that in the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. It is further provided, however, that the 27½ per centum allowance shall not exceed 50 per centum of the net income of the taxpayer from the property and that in no case shall the depletion allowance be less than it would be if computed without reference to the section mentioned.

The petitioner contends that the depletion allowance computed on the cost basis amounts to $4,179.47 and, since that amount is

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

\* \* \* \* \* \* \*

(b) *Basis for depletion.—*

\* \* \* \* \* \* \*

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

greater than the amount allowed by the respondent, under section 114 (b) (3), *supra*, it is entitled to the larger deduction. In computing the deduction claimed, the petitioner first ascertained the unit cost per barrel of oil by dividing the total intangible expenditures on the well, amounting to $29,027.46, by the well's oil content of 142,500 barrels, and then, by multiplying the unit cost so determined by the number of barrels produced in 1931, arrived at the depletion figure of $4,179.47. If the petitioner's depletion deduction is to be computed on the basis of cost rather than by one of the methods prescribed by section 114 (b) (3), *supra*, the basis for that computation must be limited to petitioner's actual depletable cost and may not include the cost to others. Clearly the facts of record do not support the claim of a depletable cost to the petitioner in the amount of $29,027.46. The total cost of the well, tangible and intangible, amounted to $81,848.39, of which amount $47,929.04 was supplied by the purchasers of percentage interests in production, leaving $33,-919.35 as the amount furnished by the petitioner. We have previously pointed out that the sums received by the petitioner from the purchasers of percentage interests did not constitute income to the petitioner, but represented sums held subject to an implied trust for use in drilling the well for the benefit of the certificate holders. It follows that no part of the $47,929.04 received from the sale of certificates and expended in sinking the well may be said to be cost of the well to the petitioner. The inconsistency of the petitioner's position is that it contends that such receipts did not belong to it, for the purpose of computing its taxable income for the years 1930 and 1931, but at the same time seeks to include such part thereof as its cost in drilling the well. The petitioner is, of course, entitled to include only its actual depletable cost in computing the depletion deduction on a cost basis and is not entitled to include that portion of the depletable cost of the well representing expenditures by the certificate holders. Cf. *Kell* v. *Commissioner*, 88 Fed. (2d) 453; affirming in part, 32 B. T. A. 21.

On the facts before us, the petitioner's depletable cost should be determined by allocating the actual amount expended by it and from its own funds between tangibles and intangibles. The amount thus allocated to intangible expenditures represents the amount recoverable by the petitioner through depletion if computed on the cost basis. If the depletion allowance computed on that basis is less than the allowance computed on the percentage basis, the petitioner is entitled to the larger deduction.

It is also apparent that the petitioner is not entitled to deduct the full amount of the depletion on Saylin-Verge Well No. 1 computed under section 114 (b) (3), *supra*. If a taxpayer has acquired or retained the right to share in the oil produced from a certain prop-

erty, "he has an economic interest in the oil in place, which is depleted by production" and entitles him to a depletion allowance thereon. *Palmer* v. *Bender*, 287 U. S. 551; *Thomas* v. *Perkins*, 301 U. S. 655; *Commissioner* v. *O'Donnell*, 90 Fed. (2d) 907; *Commissioner* v. *Elliott Petroleum Corporation*, 82 Fed. (2d) 193; and *Rocky Mountain Oil Co.*, 36 B. T. A. 365. The statute provides for a single depletion allowance in respect of any given property, however, and this allowance is to be apportioned among the parties entitled to depletion on the basis of the economic interest of each party. *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312. The deduction permitted to any one party is limited therefore to his proportionate share of the total allowance to all parties. *Caroline C. Spalding*, 35 B. T. A. 132. In this case the petitioner sold and exchanged percentage interest certificates covering 35.4124 percent of the entire proceeds to be derived from the well's production, thereby reducing its depletable interest in the well's recoverable reserve to 64.5876 percent. Accordingly, the petitioner is entitled, under section 114 (b) (3), *supra*, only to its proportionate share, or 64.5876 percent, of the total depletion allowance to all parties who owned depletable interests in the property.

The depletion deduction will be computed under section 114 (b) (3), *supra*, on the percentages above indicated, and on the basis of cost as previously outlined, and allowed in whichever amount is greater.

At the end of 1931 the petitioner had accrued on its books $1,895.78 representing unpaid landowners' royalties. By agreement with the landowners, the petitioner was allowed to defer payment of such claims until after its more pressing debts were paid. The respondent does not question the petitioner's right to deduct all accruable debts from its gross income, but argues in his brief that "Because the royalty was waived until creditors were paid * * * the payment of the amount by petitioner was uncertain and could not be an accrued liability until the condition of the corporation was such that there was at least some certainty that the amount would be paid." There is no merit to this argument. The accruability test of a debt is not certainty of payment, but rather certainty of its liability, and a taxpayer on the accrual basis can not defer deductions for a debt which becomes fixed in a given year to a subsequent year. Art. 342, Regulations 74; *Miller & Vidor Lumber Co.* v. *Commissioner*, 39 Fed. (2d) 890; *Lichtenberger-Ferguson Co.* v. *Welch*, 54 Fed. (2d) 570; *Desco Corporation* v. *United States*, 55 Fed. (2d) 411; *Southern Power & Light Co.* v. *United States*, 72 Fed. (2d) 368. The record supports the petitioner's contentions on this item and they are accordingly sustained.

*Decision will be entered under Rule 50.*