C. A. EVERTS ET AL., JAMISON LEASE SYNDICATE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

C. A. EVERTS ET AL., OLLIE COOK LEASE SYNDICATE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 82995, 83000. Promulgated October 28, 1938.

*Geo. S. Atkinson, Esq.*, for the petitioners.

*James H. Yeatman, Esq.*, and *M. L. R. Wade, Esq.*, for the respondent.

1042

1044

OPINION.

TYSON: At the outset we deem it necessary to determine the character of the interests, i. e., the property rights, acquired by those who subscribed to the Everts-Jamison lease drilling fund, for, in our opinion, the true character of such interests constitutes one of the salient features upon which must rest the determination of the principal issue here involved. While the Federal taxing statutes have certain of their own criteria for determining liability thereunder for Federal taxes, *Burnet* v. *Harmel*, 287 U. S. 103; *Weiss* v. *Wiener*, 279 U. S. 333; *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110, state laws are controlling in the determination of property rights, *Crooks* v. *Harrelson*, 282 U. S. 55; *Poe* v. *Seaborn*, 282 U. S. 101; *Tyler* v. *United States*, 281 U. S. 497.

Under the assignment of February 15, 1932, which was duly signed by the assignor, acknowledged, delivered, and recorded, the assignor did "grant, bargain, sell, transfer, assign, convey and set over unto C. A. Everts", an undivided one-half interest in the Jamison lease and the oil and gas thereunder. Under the laws of Texas such instrument constituted a conveyance to Everts of an interest in real property. *Crabb* v. *Bell* (Tex. Civ. App.), 220 S. W. 623; *McEntire* v. *Thomason* (Tex. Civ. App.), 210 S. W. 563; *Texas Co.* v. *Daugherty* (Tex. Civ. App.), 176 S. W. 717; *Stephens County* v. *Mid-Kansas Oil & Gas Co.*, 113 Tex. 160; 254 S. W. 290; *Commissioner* v. *Fleming*, 82 Fed. (2d) 324; *Commissioner* v. *Wilson*, 76 Fed. (2d) 766; *Ferguson* v. *Commissioner*, 45 Fed. (2d) 573.

The facts herein establish that C. A. Everts, as an individual owner of an undivided one-half interest in the Jamison lease, offered to sell undivided fractional interests in such lease and the wells to be drilled thereon in consideration for cash subscriptions to a drilling fund by investors, and, further, that such investors intended to become coowners of such lease and wells through assignments from Everts. Under the authorities cited in the next preceding paragraph, the assignments duly executed and delivered by Everts, as assignor,

whereby he did "grant, bargain, sell, convey, transfer and assign" undivided fractional interests in the Jamison lease and the wells to be drilled thereon, to each purchaser, constituted conveyances of interests in real property to such purchasers. Those written instruments constituted valid conveyances of title as between the parties despite the lack of acknowledgment by Everts and recordation by the assignees, for acknowledgment is a formality requisite only to recordation and notice. *McLane* v. *Canales* (Tex. Civ. App.), 25 S. W. 29; *Johnson* v. *Russell* (Tex. Civ. App.), 220 S. W. 352; *Mondragon* v. *Mondragon* (Tex. Civ. App.), 239 S. W. 650, and authorities cited therein; *First State Bank in Caldwell* v. *Stubbs* (Tex. Civ. App.), 48 S. W. (2d) 446; *Hill* v. *McIntyre Drilling Co.* (Tex. Civ. App.), 59 S. W. (2d) 193. Cf. *McCracken* v. *Sullivan* (Tex. Civ. App.), 221 S. W. 336.

Simultaneously with becoming a coowner of the Jamison lease each purchaser of a fractional interest therein, separately, individually, and not jointly with anyone else, executed the nonrevocable power of attorney set forth in our findings of fact, appointing Everts as his or her separate agent for a period of five years, with prescribed powers and authority, which were, briefly, to drill the oil wells, to produce, save, and market the oil and gas from such wells, to pay certain expenses, to distribute his or her pro rata share of the net proceeds, and to sell his or her fractional interest. Also, each purchaser of a fractional interest in the Jamison lease agreed with Everts to a restriction upon the sale by such purchaser of such interest. However, Everts consented to and joined in occasional conveyances of some of such interests. Everts carried out the terms of his agency agreement with each owner of a fractional interest in the Jamison lease, maintained personal books of account for his receipts and disbursements, rendered an accounting to each coowner, and from his personal bank account disbursed to each coowner his pro rata share of the net proceeds from the production and sale of oil from the Jamison lease. The coowners of the Jamison lease, as a group, had no form of organization empowered to direct, control, or participate in the development or management of the Jamison lease, and under the powers of attorney given Everts there was no provision for the selection of a successor to Everts in the event of his death or incapacity to act as the agent of each coowner.

The question presented here is whether the agreed amount of net income involved in these proceedings for the years 1932 and 1933 is subject to income tax as the income of the various individual owners of fractional interests in the Jamison lease, as contended by petitioners, or as the income of associations taxable as corporations, as contended by respondent.

The applicable provisions of the Revenue Act of 1932, section 1111 (a) (2) and (3),[1] are set forth in the margin. The statute provides that the term "corporation" includes "associations" without further definition or explanation of the word "associations." The meaning and scope of the term "associations" as used in the statute has been in issue in numerous cases before this Board and in the courts upon varying factual circumstances, and, while those cases do not "translate the statutory concept )f association into a particularity of detail that would fix the status of every sort of enterprise or organization which ingenuity may create" (*Morrissey* v. *Commissioner*, 296 U. S. 344), they do establish certain controlling principles for ascertaining the intent of Congress in applying the act to the varying circumstances of each particular case in which the issue may be presented.

The word "association", used in the act in its ordinary meaning, has been defined as a term "used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise." *Hecht* v. *Malley*, 265 U. S. 144. The word "association" implies associates and the entering by them into a joint enterprise for the transaction of business and the sharing of gains. The inclusion of associations in the same taxable class with corporations implies resemblance to, but not identity with, corporations, so that neither the presence nor the absence of any particular corporate forms, procedure, or terminology is a controlling test. The character and purpose of the unincorporated organization or body of persons must be determined by the terms of the instrument or agreement under which the activities of the enterprise are conducted. *Morrissey* v. *Commissioner*, *supra*.

In the last cited case and its companion cases, *Swanson* v. *Commissioner*, 296 U. S. 362; *Helvering* v. *Combs*, 296 U. S. 365; and *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369, decided on the same day, the Supreme Court had under consideration the meaning and scope of the term "associations" as applied to the taxability of so-called business trusts as distinguished from ordinary trusts, the latter not being subject to tax as corporations. In the *Morrissey* case the Court said:

What, then, are the salient features of a trust—when created and maintained as a medium for the carrying on of a business enterprise and sharing its

---

[1] SEC. 1111. DEFINITIONS.

(a) When used in this Act—

* * * * * * *

(2) The term "corporation" includes associations, joint-stock companies, and insurance companies.

(3) The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this Act, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.

gains—which may be regarded as making it analogous to a corporate organization? A corporation, as an entity, holds the title to the property embarked in the corporate undertaking. Trustees, as a continuing body with provision for succession, may afford a corresponding advantage during the existence of the trust. Corporate organization furnishes the opportunity for a centralized management through representatives of the members of the corporation. The designation of trustees, who are charged with the conduct of an enterprise,—who act "in much the same manner as directors,"—may provide a similar scheme, with corresponding effectiveness. Whether the trustees are named in the trust instrument with power to select successors, so as to constitute a self-perpetuating body, or are selected by, or with the advice of, those beneficially interested in the undertaking, centralization of management analogous to that of corporate activities may be achieved. An enterprise carried on by means of a trust may be secure from termination or interruption by the death of owners of beneficial interests and in this respect their interests are distinguished from those of partners and are akin to the interests of members of a corporation. And the trust type of organization facilitates, as does corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise, and also the introduction of large numbers of participants. The trust method also permits the limitation of the personal liability of participants to the property embarked in the undertaking.

In the companion cases, *supra*, the Supreme Court further held that a limitation upon the number of beneficiaries or the size of the business enterprise does not serve to alter the purpose or character of the undertaking; that the fact that the beneficiaries do not exercise control over the trustees is not determinative; and that the lack of particular corporate forms, such as meetings, minute books, bylaws, an official name, a seal, an office, etc., is not controlling.

In *Lewis & Co.* v. *Commissioner*, 301 U. S. 385, in order to subdivide and sell lands for the use and benefit of the grantor and another beneficiary, a trust was created to hold title to certain land. The trustee was given power to deal with the real estate so far as the public was concerned, but was to do so only in accordance with the agreement attached to the trust instrument. By the agreement so attached, the grantor appointed an agent, other than the trustee, to manage and control the property for purposes of sale, and the trustee was empowered only to execute deeds for the conveyances of titles and other necessary contracts according to the written directions of the agent. The Court said, *inter alia*:

If it were not for the declaration of trust, we should have here the simple case of an appointment by a landowner of an agent to subdivide the land and sell it * * *. It is quite evident that such an arrangement has no element of substance or method which would warrant its designation as an association under the statutory provision in question. Nor can we see that the intervention of a trustee to hold title, execute contracts and conveyances at the direction of the real-estate agent and make collections alters the situation.

* * * There is to be found in the operation of the business no essential characteristic of corporate control—nothing analogous to a board of directors or shareholders, no exemption from personal liability, no issue of transferrable

certificates of interest. There is simply the common relation of principal and agent, coupled with the collateral incidents of an ordinary trust. We are not able to find in the situation an "association" within the meaning of the statute under consideration, because there are no associates and no feature "making [the trust] analogous to a corporate organization". 296 U. S. at p. 359.

In the instant case we have, without doubt, a business enterprise, but we do not have a business trust with corporate attributes as was considered in the *Morrissey* and its companion cases. Therefore, to find that the petitioners constituted "associations" taxable as corporations there must be found to exist here some organization or body of persons whose control, direction, and participation in the conduct of that business enterprise bear corporate analogy. It is unnecessary for us to determine whether the petitioners constituted a partnership within the meaning of section 1111 (a) (3), *supra*, for no such question is involved.

In the instant case we have a number of coowners of undivided interests in an oil and gas lease which constituted interests in real property and each of them separately arranged for the development of their property through a nonrevocable agency. It is true that each coowner, as such, was necessarily interested in the business enterprise of drilling wells on the Jamison lease and producing oil and gas therefrom for profit. However, they had no agreement or arrangement among themselves as a group, providing for the essential characteristics of corporate control of the enterprise. They achieved a unity of purpose and operation only through having a common agent. There was nothing analogous to a corporate board of directors with broad powers to manage, direct, and control the enterprise. Instead each coowner, separately and individually, appointed Everts his or her agent with powers and authority expressly delegated and fixed in advance by his or her individual agreement with Everts. There was nothing analogous to corporate shareholders owning transferable certificates of interest. Instead each party in interest was the owner of an undivided interest in real property, which was transferable only as real property. There was nothing analogous to the limited liability of the members of a corporation, for here there was no limitation upon the liability of the coowners. There was nothing analogous to corporate continuity, for while the agency of Everts was nonrevocable for a period of five years, the death of Everts within that period would have interrupted the continuance of the undertaking by termination of the agency.

It is our opinion that as between the coowners of an undivided interest in the Jamison lease, including Everts, they were tenants in common, and, further, that as between each of such coowners and Everts there was, under the terms of the power of attorney, simply

the relation of principal and agent. Everts "was not the agent of an aggregation of" coowners, "that is to say, of an entity  *  *  *." *Commissioner* v. *Whitcomb Coca-Cola Syndicate*, 95 Fed. (2d) 596, affirming 35 B. T. A. 1031. We conclude that the petitioners herein did not constitute "associations" taxable as corporations within the meaning of the applicable act. See *Lewis & Co.* v. *Commissioner, supra; Commissioner* v. *Whitcomb Coca-Cola Syndicate, supra; Commissioner* v. *Gerstle*, 95 Fed. (2d) 587, affirming 33 B. T. A. 830; *Darol Trading Account*, 34 B. T. A. 837; and *Stantex Petroleum Co., Trustee*, 38 B. T. A. 269, and authorities cited therein.

In *Thrash Lease Trust*, 36 B. T. A. 444, cited by respondent, we did not think that the facts were sufficient to overcome the showing made in favor of the correctness of the Commissioner's determination and in that respect is distinguished from the instant case.

Our conclusion as to the first issue obviates the necessity of consideration of the alternative issues.

Reviewed by the Board.

*Decision will be entered for the petitioners.*