JOHN PROVENCE #1 WELL, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 78153–78160, 78163, 78164. Filed November 29, 1961.

*Robert F. Banks, Esq.*, for the petitioners.
*David L. Ketter, Esq.*, for the respondent.

BRUCE, *Judge:* The respondent determined deficiences in income tax of petitioners in the years and amounts as follows:

---

[1] Proceedings of the following petitioners are consolidated herewith: Hillis Well, Docket No. 78154; John B. Kline #1 Well, Docket No. 78155; G. R. Goode #1 Well, Docket No. 78156; Hoover Well, Docket No. 78157; Albert Donahoo #3 Well, Docket No. 78158; Albert Donahoo #2 Well, Docket No. 78159; Youngwood Coal Company Well, Docket No 78160; Welty Unitized #2 Well, Docket No. 78163; and J. O. Boyle and Winifred Boyle, Docket No. 78164.

| Year | Docket No. 78153 | Docket No. 78154 | Docket No. 78155 | Docket No. 78156 | Docket No. 78157 | Docket No. 78158 |
|---|---|---|---|---|---|---|
| 1950 | $2,914.53 | $377.34 | ------------ | $170.78 | $80.24 | $31.22 |
| 1951 | 3,467.04 | 447.64 | ------------ | 180.41 | 112.46 | 547.27 |
| 1952 | 3,244.17 | 438.21 | ------------ | 138.48 | 19.32 | ------------ |
| 1953 | 2,838.75 | 433.76 | ------------ | 100.21 | ------------ | ------------ |
| 1954 | 2,087.18 | 340.85 | $333.25 | 40.89 | 1.99 | ------------ |
| 1955 | 1,695.31 | 427.40 | 306.54 | ------------ | 40.25 | ------------ |
| 1956 | 1,298.30 | 444.13 | 270.62 | ------------ | 28.99 | ------------ |

| Year | Docket No. 78159 | Docket No. 78160 | Docket No. 78163 | Docket No. 78164 |
|---|---|---|---|---|
| 1950 | $1,499.97 | $72.49 | $759.90 | ------------ |
| 1951 | 1,553.20 | 16.70 | 507.11 | ------------ |
| 1952 | 2,364.08 | 41.46 | 73.79 | ------------ |
| 1953 | ------------ | 59.27 | 72.20 | $1,394.72 |
| 1954 | 326.88 | 44.99 | 28.19 | ------------ |
| 1955 | 309.37 | 34.99 | 60.64 | 205.56 |
| 1956 | 98.45 | 24.77 | 27.26 | ------------ |

The parties have stipulated that the dividend issue raised in Docket No. 78164 is to be decided consistently with our determination of the issues raised by Docket Nos. 78153 through 78160 and Docket No. 78163. They have stipulated further that the petitioners in Docket No. 78164 incurred net operating losses in stipulated amounts in 1956 and 1957, which are available for carryback to said petitioners' taxable year 1955.

Two issues remain for our consideration: (1) Were the petitioners in Docket Nos. 78153 through 78160 and Docket No. 78163 associations which are taxable as corporations; (2) if the petitioners in Docket Nos. 78153 through 78160 and Docket No. 78163 were associations taxable as corporations, did their respective taxable incomes include income attributable to the respective interests in each of J. O. Boyle.

### FINDINGS OF FACT.

Many of the facts have been stipulated and are incorporated herein by this reference.

The petitioners, J. O. Boyle and Winifred Boyle, in Docket No. 78164, are husband and wife residing at 12 South Fifth Street, Youngwood, Pennsylvania. They filed individual income tax returns for the years involved with the director of internal revenue at Pittsburgh, Pennsylvania. None of the petitioners in Docket Nos. 78153 to 78160, inclusive, and Docket No. 78163 filed income tax returns for any of the years involved.

J. O. Boyle practiced dentistry in Youngwood, Pennsylvania, from 1919 to 1952. He became active in the gas well business in 1941, when he purchased interests in a number of wells and obtained an oil and gas lease on a piece of property. In 1943 he purchased a drilling rig and thereafter engaged in the separate business of drilling and servicing gas wells. This drilling and servicing business was operated

as an individual proprietorship until April 1, 1953. From April 1, 1953, to July 31, 1955, it was operated as a corporation. At no time did Boyle transfer to this corporation any leasehold interest in oil and gas held by him.

In 1944 Boyle registered with the Pennsylvania Securities Commission as a dealer and broker. This registration was required of persons selling fractional interests in oil and gas wells.

Oil and gas leases obtained by Boyle covered properties on which wells were drilled as follows:

| Docket No. | Name of well | Docket No. | Name of well |
|---|---|---|---|
| 78153 | John Provence #1 Well | 78158 | Albert Donahoo #3 Well |
| 78154 | Hillis Well | 78159 | Albert Donahoo #2 Well |
| 78155 | John B. Kline #1 Well | 78160 | Youngwood Coal Company Well |
| 78156 | G. R. Goode #1 Well | | |
| 78157 | Hoover Well | 78163 | Welty Unitized #2 Well |

The several leases contain no differences material to these cases. The lease on the property on which John Provence #1 Well was drilled provided in part as follows:

That the said Lessor * * * has granted, demised, leased and let unto the Lessee, his heirs, executors, administrators and assigns all the oil and gas in and under all that certain tract of land and also, said tract of land hereinafter described, with covenants of general warranty, and that the Lessor has the sole right to convey the premises to the Lessee, with the exclusive right of drilling and operating thereon, for and producing oil and gas, and all rights necessary, convenient and incident thereto; * * *

After acquisition of a given lease, and in connection with the gas wells here involved, Boyle sent prospectuses or advertising to prospective purchasers of fractional working interests. These materials described the property and well and told the cost of interests.

Persons who paid Boyle for fractional shares received "assignments." The several forms of assignment did not differ in any manner material to these cases.[2] Assignments of fractional shares in the John Provence #1 Well provided in part as follows:

### ASSIGNMENT OF PART INTEREST

KNOW ALL MEN BY THESE PRESENTS, I/We J. O. Boyle—Youngwood, Pa. Owner—Assignor—for value received—do hereby assign, and set over unto: Lester W. Albright, Box 347 R.D. #2, Greensburg, Penna. hereinafter called the Assignee, One sixty-fourth, (1/64) working interest in Well No. 1 to be drilled through the Fifth sand horizon, or where it should be found in the locality, unless a commercial well is found at a lesser depth on the John Provence leasehold, which is owned by the Assignor, containing 160 acres, located in Anwell Township, Washington County, bounded and described as follows:

*     *     *     *     *     *     *

---

[a] The assignment form applicable to Docket No. 78157 (the Hoover Well) provided specifically for minority interest holders' priority rights of purchase should a majority desire to sell. Secondly, the salvage clause was omitted. Neither of these changes is material.

WITH ALL RIGHTS AND PRIVILEGES in law or equity, subject to the terms of the lease, and to the conditions contained herein, to have and to hold during the term of the well. No partnership is here created or intended, but tenancy in common.

J. O. BOYLE—YOUNGWOOD, PA. shall act as Agent/Trustee/Attorney in fact/for Assignee, with exclusive powers to sell any or all gas and oil produced from this lease, and to sign all orders and papers incident to the operation and management of the well and property. The Agent shall make regular statements and return of receipts of sales less expenses.

A. IF THE WELL IS PRODUCTIVE the Assignee shall pay the proportionate share herein assigned of the cost of the materials and expenses, including torpedoing, incident to the production, operation, and sale of the product of the well, as determined by the Assignor, within twenty days after delivery of notification at the above address.

—See below : "The proceeds of salvage, etc."

B. SHOULD THE ASSIGNOR DESIRE to drill to a deeper sand, or to drill an additional well or wells on the leasehold, the Assignee shall pay the proportionate share herein assigned of the approximate cost, as determined by the Assignor, within fifteen days after delivery of notification at the above address.

C. IF THE PAYMENT IS NOT MADE in response to notice by registered delivery at the above address, the Assignee shall forfeit all interest in the well stated in the notice, and in the remaining undeveloped part of the lease, the interest so forfeited to revert to the Assignor. Excepting, see below : "The proceeds of salvage, etc."

D. THIS INTEREST SHALL BE SOLD whenever the ownership of a majority in quantity of interest in the well or wells and lease desire, and the right is reserved for the Assignor/Agent/Trustee/Attorney in fact/to transfer this interest, but the proceeds of this interest sold shall be paid to the Assignee, less any indebtedness against this interest.

E. IF COMMERCIAL PRODUCTION IS FOUND at lesser depth than the bottom of the Gordon sand horizon, without expense for maintaining or deepening the hole, a share of the saving shall be credited to lessen the cost of materials and expenses as stated in (A) above. If this is done, the Assignee shall pay the share of any later drilling costs as stated in (B) above.

F. THE PROCEEDS OF SALVAGE or the net receipts for materials disposed of other than receipts for the production of the well, shall be returned prorata to those who paid for them as stated in (A) above, not to exceed the amount so paid.

IN WITNESS WHEREOF I/We have hereunto set my/our hand and seal this day : 6/15/49

WITNESS
/S/ Mildred Muchoney                    /S/ J. O. Boyle _____ (SEAL)

_____      _____ (SEAL)

Records maintained by Boyle demonstrate that substitution of ownership of fractional shares occurred both because of transfers of interests and death of interest holders. Operations were not interrupted by the transfer of an interest or death of the holder thereof.

Each of the wells was managed entirely by Boyle. He contracted for sales of gas produced. The several sales contracts did not differ materially. They provided the terms of payment; stated that J. O.

Boyle was agent for the seller or sellers; and were made binding on the heirs, personal representatives, successors, and assigns of the parties.

All moneys received by Boyle from sales of gas from all wells under the gas purchase contracts were deposited by him to his personal bank account. He maintained a separate record of receipts, expenses, and distributions with respect to each well. Distributions of proceeds were made by checks bearing the name of the particular well for which a given distribution was made. Expenses were charged to the well benefited.

None of the gas well petitioners was incorporated, and none was registered under the Pennsylvania Fictitious Names Act. None ever had a telephone listing, stationery, officers or directors, bank account, bylaws, articles of association, or office space. Nor did any have employees.

The notices of deficiency in Docket Nos. 78153 to 78160, inclusive, and Docket No. 78163, were addressed to the respective petitioners "c/o J. O. Boyle, 12 South Fifth Street, Youngwood, Pennsylvania." Each of said notices contains the statement: "It is determined that the operation designated [the name of the petitioner involved] qualifies as an association taxable as a corporation." Each of the petitions filed pursuant to said notices was signed by J. O. Boyle, "Agent for the owners of this property as tenants in common."

## OPINION.

Petitioners (except those in Docket No. 78164) are certain designated gas wells.[3] The issue is whether such petitioners constitute associations taxable as corporations.

The applicable Code sections are 3797(a)(3), I.R.C. 1939, and 7701(a)(3), I.R.C. 1954, containing the following relevant language: "The term 'corporation' includes associations, joint-stock companies, and insurance companies."

The term "association" is not defined in either the 1939 or 1954 Internal Revenue Code. With reference to an earlier but similar revenue Act, the Supreme Court, in *Morrissey* v. *Commissioner*, 296 U.S. 344, 354–355, stated:

As the statute merely provided that the term "corporation" should include "associations," without further definition, the Treasury Department was authorized to supply rules for the enforcement of the act within the permissible bounds of administrative construction. Nor can this authority be deemed to be so restricted that the regulations, once issued, could not later be clarified or enlarged so as to meet administrative exigencies or conform to judicial decision. * * *

---

[3] Petitioners in Docket No. 78164 are J. O. Boyle and his wife. The issues raised in that docket are, by stipulation, to be determined by our conclusion in the other dockets.

Regulations with respect to "associations" issued under the 1954 Code are not applicable to the years before us. Income Tax Regs., sec. 301.7701–2. Section 7701(a)(3), I.R.C. 1954, is unchanged from section 3797(a)(3), I.R.C. 1939. Regulations issued under the 1939 Code are, therefore, applicable to both sections. Reference is made to the applicable regulations in Regulations 118, section 39.3797, *et seq.* (being substantially the same as Regulations 111, section 29.3797, *et seq.*).

Section 39.3797–2 of Regulations 118 provides in part as follows:

The term "association" is not used in the Internal Revenue Code in any narrow or technical sense. It includes any organization, created for the transaction of designated affairs, or the attainment of some object, which, like a corporation, continues notwithstanding that its members or participants change, and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity. It is immaterial whether such organization is created by an agreement, a declaration of trust, a statute, or otherwise. It includes a voluntary association, a joint-stock association or company, a "business" trust, a "Massachusetts" trust, a "common law" trust, an interinsurance exchange operating through an attorney in fact, a partnership association, and any other type of organization (by whatever name known) which is not, within the meaning of the Code, a trust or an estate, or a partnership. * * *

Section 39.3797–4 of Regulations 118 provides in part as follows:

If an organization is not interrupted by the death of a member or by a change in ownership of a participating interest during the agreed period of its existence, and its management is centralized in one or more persons in their representative capacities, such an organization is an association, taxable as a corporation. * * *

J. O. Boyle acquired oil and gas leases. He made assignments of fractional interests, reserving all rights of management of the wells and sale of the production therefrom. The assignees received the right to participate in net profits. Boyle retained fractional shares for himself in each of the wells.

We have decided these cases on the authority of *Morrissey* v. *Commissioner*, *supra*. In that case it is stated that the organization or entity under examination need not be identical with a corporation to be so taxed. It need only resemble a corporation.

The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity. * * * the classification cannot be said to require organization under a statute, or with statutory privileges. The term embraces associations as they may exist at common law. * * * While the use of corporate forms may furnish persuasive evidence of the existence of an association, the absence of particular forms, or of the usual terminology of corporations, cannot be regarded as decisive. * * * [pp. 357–358.]

However, there must be associates who have entered into a joint enterprise for the transaction of business. *Morrissey* v. *Commissioner*, *supra*.

Petitioners rely on several cases arising out of the assignment of interests in which the subject oil and gas leaseholds were located in Texas, wherein it was held that associations subject to income tax as corporations did not exist. *Commissioner* v. *Horseshoe L. Syndicate*, 110 F. 2d 748 (C.A. 5, 1940), affirming a Memorandum Opinion of this Court, certiorari denied 311 U.S. 666; *Commissioner* v. *Rector & Davidson*, 111 F. 2d 332 (C.A. 5, 1940), affirming a Memorandum Opinion of this Court, certiorari denied 311 U.S. 672; *C. A. Everts et al.*, *Jamison Lease Syndicate*, 38 B.T.A. 1039; *Stantex Petroleum Co.*, *Trustee*, 38 B.T.A. 269. In each of these cases the Court found no association primarily on the premise that there were no associates and that there was no joinder of purpose to carry on a business. The basic factor underlying these determinations was the finding that such assignments as were involved created interests in real property and a tenancy in common with respect to the lease. The courts found that separate agency relationships were created with the assignees as principals. See I.T. 3930, 1948-2 C.B. 126.

In the instant cases, however, no rights flowed from the assignees to the assignor. The assignees were recipients of rights of financial participation in return for the money advanced by them. They invested in a well being drilled or to be drilled, acquiring no rights in kind to the gas produced. The business of a given gas well was not separable under the terms of the assignments, but rather was joint. The rights of the assignees were essentially equitable. See *Transcalifornia Oil Co.*, *Ltd.*, 37 B.T.A. 119. The assignments in the instant cases are inexact with respect to the legal relationships of the parties. Nor is Pennsylvania law, which governs the property rights created, specific as to the nature thereof. *Commonwealth* v. *Yaste*, 166 Pa. Super. 275 (1950), 70 A. 2d 685 (1950). Nevertheless, it is clear that the assignees accepted the business purpose of Boyle, which extended not only to development of the leaseholds but to sale of the gas produced as well. Thus, whether the assignments created tenancies in common is not determinative of the issue before us. *Morrissey* v. *Commissioner*, *supra*; *Hecht* v. *Malley*, 265 U.S. 144; *Burk-Waggoner Assn.* v. *Hopkins*, 269 U.S. 110. See also *Thrash Lease Trust*, 36 B.T.A. 444, affd. 99 F. 2d 925 (C.A. 9, 1938), certiorari denied 306 U.S. 654.

In another respect the question of the existence or nonexistence of tenancies in common, under Pennsylvania law, is not controlling. For not only is there no provision for separation of the gas produced in any of the assignments; but, even if separability of the gas produced existed as a matter of law, the practical impossibility thereof would have to be recognized. *United States* v. *Stierwalt*, 287 F. 2d 855 (C.A. 10, 1961).

Petitioners embodied a common purpose to carry on a business for profit. The assignees were participants in this purpose; hence, they were associates.[4]

No claim is made that petitioners were partnerships. Nor do we find any reason to conclude they were.

Still, it is necessary to examine carefully the nature of the joint enterprises for profit here involved to determine the degree of similarity or difference vis-a-vis a corporation. For it is extent of resemblance of petitioners to a corporation upon which the issue of taxability as a corporation turns. *Morrissey* v. *Commissioner, supra.*

The corporate form affords centralization of management. Boyle reserved to himself all managerial functions. While there are no specific provisions for managerial succession, the leases held by Boyle specify the continuation of the rights thereunder to his heirs and assigns. Boyle relinquished none of these rights. Thus, the problem of managerial succession, while presenting obvious practical difficulties, does not appear to present a legal hurdle.

A second consideration is the effect of the death or transfer of an interest upon the continuity of the joint enterprises. The record discloses that deaths and transfers occurred without demonstrable effect upon the enterprises involved. No provisions of the assignments cover this matter. We are satisfied, however, that interests were transferable and that the enterprises were unaffected thereby. Likewise, we find no reason to conclude that participating shares retained by Boyle were other than transferable, separable from any equitable duties owed the other participants by him. Because of the absence of any limitations on the duration of any enterprise and because neither the death of an assignee nor the transfer of an assignee's interest effects a termination or material alteration of the enterprise, the attribute of corporate viability is present.

Two "salient features" discussed in *Morrissey* v. *Commissioner, supra,* arguably are not present in the instant cases: Centralization of legal title and limited liability. We have noted already that the issue of title is unclear under Pennsylvania law. Associations have been held to exist, however, despite a lack of clarity with respect to title. See *Thrash Lease Trust, supra,* and *Craig M. Smith,* 33 T.C. 465, on appeal (C.A. 8). In the instant cases, moreover, the powers retained by Boyle were the equivalent of absolute ownership subject to only two considerations: The equitable rights in the assignees arise from implied trusts with respect to the funds invested, *Transcalifornia Oil Co., Ltd., supra,* as well as their specific rights of participation in profits, and the provision in the assignments that an

---

[4] " 'Association' implies associates. It implies the entering into a joint enterprise, * * * for the transaction of business." *Morrissey* v. *Commissioner,* 296 U.S. 344, 356.

"interest shall be sold whenever the ownership of a majority in quantity of interest in the well or wells and lease desire * * *." Neither of these conflicts with the concept of corporate resemblance. Furthermore, the vagaries of title may be wholly inapposite to our analysis. *Hecht* v. *Malley, supra; Burk-Waggoner Assn.* v. *Hopkins, supra; United States* v. *Stierwalt, supra.*

Whether or not there was limited liability in its strict sense, it is apparent there was a purpose to limit the liability of the investors to the amount originally contributed to the enterprise. This has been held a resemblance to a corporation. *Thrash Lease Trust, supra.* The assignments provided that the assignees would be liable only for their "proportionate share" of the costs, as well as for additional drilling to a deeper depth or drilling of additional wells on the particular leasehold. It was further provided that if the assignee did not pay his proportionate share of expenses for additional drilling he would forfeit all interest in the well stated in the notice furnished him and in the remaining undeveloped part of the lease. Thus, the assignee could, if he so elected, limit his liability to the amount originally invested by him, subject, however, to forfeiture. Such forfeiture may be likened to the loss incurred by stockholders in a corporation forced to cease operations for lack of additional capital. The provision in the assignment itself that no partnership was intended is also indicative of an intent to limit liability. *Commissioner* v. *Fortney Oil Co.*, 125 F. 2d 995, 998. Moreover, this and other courts have held that the presence or absence of limited liability is not a conclusive factor, but is only one of many guideposts to be considered in determining whether or not an association taxable as a corporation existed. *Craig M. Smith, supra; Thrash Lease Trust, supra; United States* v. *Stierwalt, supra; Fletcher* v. *Clark*, 150 F. 2d 239, 241 (C.A. 10, 1945), certiorari denied 326 U.S. 763, rehearing denied 326 U.S. 809; *Nee* v. *Main Street Bank*, 174 F. 2d 425 (C.A. 8, 1949), certiorari denied 338 U.S. 823; *Bert* v. *Helvering*, 92 F. 2d 491 (C.A.D.C. 1937); *Del Mar Addition* v. *Commissioner*, 113 F. 2d 410 (C.A. 5); *Helm & Smith Syndicate*, 136 F. 2d 440 (C.A. 9). See also *Pennsylvania Co. for Insurances Etc.* v. *United States*, 138 F. 2d 869, 873, 874 (C.A. 3), certiorari denied 321 U.S. 788.

There remain for consideration the more formal manifestations of corporate resemblance. Petitioner has stressed the lack of bylaws, articles of incorporation, general voting provisions, and physical corporate facilities. None of these is essential to a finding that petitioners were associations. *Morrissey* v. *Commissioner, supra.* We conclude, moreover, that petitioners were so identified by name, had such records kept with respect to them, and utilized assignments in a manner so like corporate share certificates that resemblance to the cor-

porate form is present. None of the evidence presented convinces us otherwise. *Thrash Lease Trust, supra; Craig M. Smith, supra.*

The methods of operation employed by petitioners, taken as a whole, bear substantial likeness to corporate forms. Accordingly, we hold that petitioners are associations taxable as corporations.

Petitioners argue that, even if they are associations, their taxable incomes do not include amounts attributable to the respective fractional interests held by Boyle.

We have found no support in the cases for this position. Moreover, we find no reason to treat Boyle's fractional interests in a manner different from that accorded other interests. Boyle's profit motive is joined with that of the other assignees. That he may have worn two hats, one as management and the other as the holder of a fractional interest, merely reinforces our conclusion. We have considered our opinion in *Junior Miss Co.*, 14 T.C. 1, and do not find that it is in conflict with this holding. In that case we found that Gordon, the owner of production rights in a certain play, was not acting in a representative capacity. There the "associates" merely made loans to Gordon, who held the production rights as nonassignable personal property. Thus Gordon acted only for himself. In the instant case Boyle acted for all of the holders of fractional shares, including himself.

Accordingly, we hold that there is included in the income of each petitioner the entire receipts derived from the sales of gas from the well.

*Decisions will be entered under Rule 50.*